UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10-CR-20028 |
| v. ) | |
| ) | |
| MICHAEL ALLEN COX, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### OPINION

This case is before the court on Defendant's Response (#43) to the Government's Notice of Intent to Introduce Evidence of "Other Acts" Admissible Under Fed. R. Evid. 404(b) (#40). Because Defendant has asked this court to bar certain evidence at trial, this court has construed it as a motion in limine. On January 30, 2013, the Government filed its Response (#45) to Defendant's Response (#43), and on February 8, 2013, Defendant filed his Reply (#48). The court has carefully reviewed the arguments presented by the parties. Following this careful review, Defendant's Motion in Limine (#43) is GRANTED in part and DENIED in part.

### Background

On May 5, 2010, Defendant was charged by indictment (#7) with one count of bank fraud, a violation of 18 U.S.C. § 1344; and one count of knowingly making a false statement for the purpose of influencing a financial institution, in violation of 18 U.S.C. § 1014. These charges are based on the Government's allegations that, in the summer of 2008, Defendant used fraudulent documents to secure financing from the Bank of Rantoul (BoR) in order to purchase

from BoR an apartment complex as an investment property. The property required extensive rehabilitation work, and BoR held the mortgage for the property.  The Government alleges that in qualifying to purchase that property from BoR, Defendant furnished to BoR an escrow receipt for $250,000 remitted by Crane and Power Industries (CPI), of which Defendant was the Chief Operating Officer. The receipt, from United Title Escrow Services, was ostensibly funded with a cashier's check from Wells Fargo Bank and deposited in a Far East National Bank account. Defendant also allegedly presented a Letter of Credit from Equity Holding Group in Zurich, Switzerland. The letter indicated it was an Irrevocable Letter of Credit in the amount of $1,632,035.00 and was signed by Wolfgang Christian. When BoR requested the most recent copy of the statement of account for CPI, it was provided with a copy of an account statement from Equity Holding Group with a balance of $39,699,334.64. Defendant also provided BoR with a Balance Sheet as of May 2008, which indicated that CPI had "total current assets" of over $84,000,000.00. BoR approved the loan and gave CPI $1,663,459.00 to purchase the complex.

After making two monthly mortgage payments in August and October 2008, CPI failed to make any subsequent payments. BoR foreclosed on the property and indicated that it had suffered a loss of $1,470,099.97 (although, as the Government admits, the appraised value of the property is only $650,000.) The Government alleges that in 2010, Wells Fargo discovered that Defendant's cashier's check was counterfeit, the original having been issued for $2,500.

At trial, the Government intends to introduce evidence regarding two separate uncharged "bad acts", pursuant to Fed. R. Evid. 404(b). First, the Government alleges that in February of 2009, Defendant negotiated with Roto-Rooter to provide repair services for two apartment complexes in Tennessee that he represented he owned. Defendant allegedly sent a statement to Roto-Rooter that CPI had a balance of over $39,000,000 as of May 31, 2008 as well as a balance

sheet as of May 2008 indicating that CPI had "total current assets" of over $84,000,000.00. The Government alleges that these statements are the same that were provided to BOR as proof of credit worthiness. Between February and March of 2009, based on those representations, Roto-Rooter performed services worth over $144,000. The Government alleges that neither Defendant nor CPI ever paid Roto-Rooter. Further, the Government intends to introduce evidence that as a result of mismanagement, one complex was left in disrepair, the water shut off, and the residents forced to move out. In May of 2009, Roto-Rooter sued CPI and Defendant in Tennessee. During the suit, it was discovered that neither Defendant nor CPI owned the property, contrary to his representations. Roto-Rooter later received a small settlement.

Second, the Government alleges that in September of 2007, Defendant told Shelley Mueller, a California resident, about several investment opportunities, including one in which low income apartments would be purchased, repaired, and resold. The Government indicates that Mueller will testify that she made investments of approximately: $30,000; $56,000; $118,000; $100,000; $20,000; $18,000; and $10,000, but has last heard from Defendant in June 2009 and has not received back the majority of her money that she invested with Defendant. The Government also intends to introduce evidence that Defendant directed Mueller to make her payments either 1) directly to him in the form of a certified check; or 2) payable to United Title Escrow Services, and to deposit the checks in a Wells Fargo account.

**Analysis**

Federal Rule of Evidence 404(b) states, in pertinent part, as follows:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

In order to be admissible under Rule 404(b), proffered evidence must:

> 1) be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) show that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) be sufficient to support a jury finding that the defendant committed the similar act; and (4) have probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. White*, 698 F.3d 1005, 1017-18 (7th Cir. 2012).

*Roto-Rooter incident*

The Government states that it will not use evidence about the Roto-Rooter incident to demonstrate Defendant's propensity or character to commit fraud, but rather, to demonstrate that Defendant had the intent to defraud and that there was no mistake. Defendant responds, in essence, that the Government cannot seek to argue intent because the analogous theory is rather that Defendant is in the habit of fraudulently obtaining repairs to rehabilitate property in which he owns no interest. But Defendant's argument merely attempts to muddle the water. "In cases involving specific intent crimes, intent is automatically in issue, regardless of whether the Defendant has made intent an issue in the case." *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir. 1989). As for bank fraud, 18 U.S.C.A. § 1344 forbids anyone to "knowingly execute[], or attempt[] to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." A "conviction for bank fraud under 18 U.S.C. § 1344 requires proof that the defendant acted willfully and with specific intent to deceive or cheat, usually for

the purpose of getting financial gain for one's self or causing financial loss to another." *United States v. Ryan*, 213 F.3d 347, 350 (7th Cir. 2000). As for 18 U.S.C.A. § 1014, the statute forbids anyone to "knowingly make[] any false statement or report. . . for the purpose of influencing in any way the action of [certain categories of financial institutions]." While the specific intent necessary for § 1014 and § 1344 are different, they both require proof of Defendant's specific intent to deceive or cheat, which is what the Government must demonstrate in order to sustain its *prima facie* case. *United States v. Lane*, 323 F.3d 568, 583 (7th Cir. 2003).

Second, the Government argues that Defendant used the same statements to secure services from Roto-Rooter as it did to secure the loan from BoR—services for which he also did not pay. The scheme was similar, the documents were similar, and the timeframe for the two incidents were within six months of each other. Although the Roto-Rooter incident occurred after, Rule 404(b) "does not restrict evidence concerning the defendant's 'other acts' to events which took place *before* the alleged crime; by its very terms, 404(b) does not distinguish between "prior" and "subsequent" acts." *United States v. Anifowoshe*, 307 F.3d 643, 646-47 (7th Cir. 2002).

Third, the Government argues that a jury may reasonably find that Defendant committed the uncharged misconduct by a preponderance of the evidence, citing to *United States v. York*, 933 F. 2d 1343, 1352 (7th Cir. 1991). Notably, *York* does not require that this court make an explicit credibility finding that Defendant committed the uncharged act by a preponderance of the evidence, but rather, only whether the jury could reasonably conclude that the act occurred and that the defendant was the actor by a preponderance of the evidence. *Id*.; *Huddleston v. United States*, 485 U.S. 681, 689 (1988). The Government intends to produce the documents signed by Defendant and copies of the credit application and Equity Holdings and Balance Sheet

submitted by Defendant to Roto-Rooter. Additionally, the Government anticipates that employees of Roto-Rooter will present testimony regarding their meetings and conversations with Defendant. This is sufficient evidence for a jury to find, by a preponderance of the evidence, that the act occurred and that Defendant was the actor.

Last, the Government argues that "most relevant evidence is, by its very nature, prejudicial, and that evidence must be *unfairly* prejudicial to be excluded. Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Long*, 86 F.3d 81, 86 (7th Cir. 1996). Defendant responds that he had valid financial and business reasons for defaulting on the loan, and that presenting information about why residents of the apartment were forced to move out would be unduly prejudicial. His first argument, which is that he had a valid business reason to apply for the loan, had made truthful statements on the credit application, and did not have a scheme to defraud a financial institution or to obtain the credit by false representations, goes directly to his *mens rea* at the time he applied for the mortgage. Whether Defendant subsequently used the same documents in a similar manner to obtain services for which he failed to pay goes to whether he had the intent to do so with BoR. Although these kinds of rulings are inherently fact-specific, the Seventh Circuit has permitted the Government to introduce evidence of uncharged misconduct to demonstrate that the defendant had the intent to engage in bank fraud. *See United States v. Ryan*, 213 F.3d 347 (7th Cir. 2000) (permitting evidence that the defendant previously failed to report kickbacks and commissions); *United States v. Harrod*, 856 F.2d 996 (7th Cir. 1988) (permitting evidence of prior stolen check and bond scheme). As intent is an element the Government must prove, it may be fairly litigated before a jury.

On the other hand, what happened to the apartment complexes after the alleged default—
that it was left in disrepair, the water shut off, and the residents forced to move out (#40 ¶ 18)—
is not relevant to whether Defendant had the intent to defraud BoR. Further, as Defendant argues,
such information would be highly prejudicial. This is especially true given that Defendant argues
that their version of the story is that shortly after Defendant engaged Roto-Rooter to work on the
property, a resident at the complex started a fire that subsequently made the property impossible
to rehabilitate, much less to live in. Litigating whether the complex was shut down due to the
Governments' or Defendant's version of events would require a mini trial-within-a-trial with no
probative value regarding Defendant's conduct and intent vis-à-vis BoR.

Accordingly, regarding the Roto-Rooter incident, Defendant's Motion is GRANTED as
to what happened to the apartment complex, and DENIED regarding Defendant's use of
documents to secure Roto-Rooter's services, and his subsequent failure to pay Roto-Rooter.

*Shelley Mueller incident*

The Government seeks to introduce the Mueller testimony to show that Defendant 1) had
a plan and intent to defraud; and 2) had control over the United Title Escrow account. Regarding
the identity and control argument, the Defendant claims that two Government witnesses, Ryan
Brown and Stephanie Brown, were responsible for the United Title Escrow Services account,
including the losses suffered from it, rather than himself. The Government responds that the
evidence will show that Defendant told Brown to sign the paperwork for the BoR loan agreement
as part of his duties as the CFO of CPI. The Government will also present testimony from Brown
that he had never seen the $250,000 United Title Escrow check before. In this way, the
Government intends to introduce the Mueller's deposits, made at Defendant's direction, into the

United Title Escrow account, to prove that Defendant was the person associated with the account and had control over it. As the Government correctly notes, its *prima facie* case of making false statements to a financial institution requires proof that Defendant deposited the fraudulent cashier's check and controlled the United Title Escrow account. However, as Defendant has argued, the Government fails to provide sufficient justification to present this inflammatory evidence to a jury.

The fact that Mueller did not receive back her investment funds—whether the amount promised, or, for that matter, her original capital—has little to do with the alleged bank fraud. Although Defendant's filings argue facts and credibility (and thus miss the point of this specific motion), the court is also unsure how a series of bad investments (or, alternately, a scheme to con an individual) sheds light on whether Defendant had the intent to defraud a bank by securing a mortgage on a property with purportedly fraudulent documentation. For that matter, such evidence is, at this stage in the proceedings, far more prejudicial than probative on any aspect of Defendant's specific intent regarding the charged offenses. To make the leap from the assertion that Defendant conned Mueller out of her money to the conclusion that Defendant therefore intended to defraud a bank is exactly the kind of tarring with the same brush that Rule 404(b) seeks to avoid. Further, litigating whether Defendant gave Mueller back her money, and if not, whether he was even legally required to do so, much less the reasons why the Defendant failed to keep up his end of the bargain, does not advance the goal of judicial economy.

Regarding the Government's "identity and control" argument, even if the court were to bar any testimony of whether Defendant returned her money, this court finds that the probative nature of Mueller's testimony regarding Defendant's control is both scant and redundant. The testimony of a person unrelated to the present matter has low probative value, and the

Government should be able to provide other, cleaner, forms of evidence to demonstrate ownership and control, such as signed documentation and testimony from witnesses involved in the present matter. That evidence will more reliable, more probative, and less prejudicial. Accordingly, Defendant's Motion is GRANTED regarding the Mueller testimony.

IT IS THEREFORE ORDERED THAT:

(1) Regarding the Roto-Rooter incident, Defendant's Motion is GRANTED as to what happened to the apartment complex, and DENIED regarding Defendant's use of documents to secure Roto-Rooter's services, and his subsequent failure to pay Roto-Rooter.

(2) Regarding the Mueller testimony, Defendant's Motion is GRANTED.

(3) The Status Conference remains set for February 15, 2013 at 10:45am.

ENTERED this 14th day of February, 2013.

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE